UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PATRIA GONZALEZ,<br>  *Plaintiff,*<br><br>  v.<br><br>AMERICAN FEDERATION OF STATE,<br>COUNTY & MUNICIPAL EMPLOYEES,<br>AFL-CIO, JOSEPH S. ARESIMOWICZ,<br>  *Defendants.* | No. 3:20-cv-505 (VAB) |

## RULING AND ORDER ON MOTIONS TO DISMISS

Patria Gonzalez ("Plaintiff") has sued the American Federation of State, County and Municipal Employees, AFL-CIO ("AFSCME") and Joseph S. Aresimowicz (together with AFSCME, the "Defendants"), in his capacity as an AFSCME employee and in his individual capacity, under 42 U.S.C. § 1983, alleging violations of her First Amendment and Fourteenth Amendment rights, as well as retaliation and intentional infliction of emotional distress.

For the following reasons, Mr. Aresimowicz's and AFSCME's motions to dismiss are **GRANTED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

From 1996 to March 2006, Ms. Gonzalez allegedly worked for the State of Connecticut Department of Correction and during that time, became a union steward for AFSCME. Am. Compl. ¶¶ 21, 23, ECF No. 13 (June 15, 2020).

During her time with the Department of Correction, Ms. Gonzalez allegedly experienced "many . . . discriminatory actions," including one instance of "sexual assault [that] caused her to go into premature labor." *Id.* ¶ 31.

In 2004, Ms. Gonzalez allegedly gave public testimony before AFSCME and Department of Correction staff, during which she discussed her sexual assault. *Id.* ¶¶ 33-40. Ms. Gonzalez alleges that after testifying, she was "retaliated against by both the Department of Correction and AFSCME on a regular basis," and subject to "a pattern of discrimination." *Id.* ¶ 40; *see id.* ¶¶ 41-51. Allegedly due to this harassment, Ms. Gonzalez began to "cope with the abuse at work by drinking, leading to being arrested for a DWI" in November 2005. *Id.* ¶ 51.

On April 7, 2006, Ms. Gonzalez allegedly lost her job "without due process." *Id.* ¶ 52. Ms. Gonzalez alleges that Mr. Aresimowicz participated in AFSCME's subsequent investigation into her termination and the arbitration process that followed, but in doing so, committed "fraud" and offered "willful false representations" that caused "years of pain and suffering." *Id.* ¶ 54. Specifically, Ms. Gonzalez alleges that at the arbitration, Mr. Aresimowicz did not prevent Department of Correction officers from recording the hearing, *id.* ¶ 59, "did nothing to protect the AFSCME union contract to secure [Ms. Gonzalez's] employment termination," *id.* ¶ 60, and "witnessed the Department of Correction, the Labor Department, and the Arbitrator violate the union contract" and other internal policies, but did not act, *id.*

In May 2008, Ms. Gonzalez, through counsel, allegedly filed a motion for injunctive relief to "end the malfeasance" in the arbitration proceedings. *Id.* ¶ 63. Ms. Gonzalez alleges that the Department of Correction and Labor Department worked with AFSCME to "misle[a]d" the court and "block" Ms. Gonzalez's motions, causing her to "miss[] the timeline" for filing. *Id.* ¶¶ 63-66. In late 2011, Ms. Gonzalez's case allegedly "ended." *Id.* ¶ 68.

In January 2012, Ms. Gonzalez allegedly began to speak with then-State Senator Eric Coleman about her case. *Id.* ¶ 70. Ms. Gonzalez also allegedly met with other officials, including Senator Cathy Osten, on several occasions to discuss her alleged sexual assault. *Id.* ¶¶ 71-75. Ms.

Gonzalez alleges that she began to release "online videos sharing gender and sexual harassment discrimination by AFSCME and [Mr.] Aresimowicz," which "prompted AFSCME to file a frivolous lawsuit against [Ms. Gonzalez] on August 28, 2015." *Id.* ¶ 76.

In the fall of 2017, "inspired" by the "Me[T]oo and Time[']s Up movement," Ms. Gonzalez allegedly decided to contact the Time's Up organization. *Id.* ¶ 77.

On April 16, 2018, Ms. Gonzalez allegedly testified at the Legislative Office Building for the Time's Up Bill. *Id.* ¶ 78. Mr. Aresimowicz allegedly sat on the panel during Ms. Gonzalez's testimony. *Id.* Ms. Gonzalez alleges that "[t]he same week[,] the AFSCME civil suit against [Ms. Gonzalez] was dropped and [] mysteriously disappeared off the . . . docket" and also that Mr. Aresimowicz "announced that there will no longer be any written transcription of public testimony." *Id.*

 Ms. Gonzalez alleges that her April 16, 2018 testimony "disappeared." *Id.* ¶ 79. Ms. Gonzalez alleges that Mr. Aresimowicz "used his political position (malfeasance) to put an end to the written transcription of public testimony at the Legislative office building" and "censor[ed] the videos of her testimony." *Id.* Ms. Gonzalez alleges further that Mr. Aresimowicz "had AFSCME drop the frivolous lawsuit against the plaintiff the same week." *Id.*

On April 23, 2018, Ms. Gonzalez allegedly testified "against then-Senator Eric Coleman's nomination for a Superior Judge for ignoring her sexual assault case." *Id.* ¶ 80.

On March 5, 2020, Ms. Gonzalez allegedly testified at the Connecticut Legislative Office Building as to "her wrongful termination and sexual assault at the Department of Correction." *Id.* ¶ 104.

On January 5, 2019, Ms. Gonzalez allegedly applied to again serve as a corrections officer. *Id.* ¶ 81. On January 9, 2019, she allegedly asked to schedule a meeting with Mr. Aresimowicz to

"discuss a Forced Arbitration proposal and to help get her old job back." *Id.* at 82. Mr. Aresimowicz allegedly agreed and told Ms. Gonzalez to speak with an appointment scheduler to calendar a time. *Id.*

On January 25, 2019, Ms. Gonzalez allegedly informed the Department of Correction that Mr. Aresimowicz would serve as her professional reference. *Id.* ¶ 83.

On February 5, 2019, Ms. Gonzalez allegedly met with Mr. Aresimowicz. *Id.* ¶ 84. Mr. Aresimowicz allegedly told Ms, Gonzalez that he would help her get her old job back and commented, "[e]veryone deserves a second chance." *Id.*

On May 15, 2019, Ms. Gonzalez allegedly attended an interview at the Enfield Correctional Institution in Enfield, Connecticut. *Id.* ¶ 85. Ms. Gonzalez alleges that upon her arrival, she was told for the first time that the interview would consist of a physical ability test. *Id.* Ms. Gonzalez alleges that during the test, she was "faster than a male candidate, who was given multiple opportunities." *Id.* at 88. She was allegedly informed after the test that she had failed by "one itty, bitty second." *Id.* at 89.

A human resources officer also allegedly told Ms. Gonzalez after the test that the instructors had "failed [her] early" because they "were concerned with her age and figured, [she] wouldn't make it," and that "[w]e don't hire people your age and if we do it's an extreme rarity." *Id.* ¶¶ 89-90. Ms. Gonzalez alleges that after the interview, she left Mr. Aresimowicz a note and a copy of her test results. *Id.* ¶ 91.

### B.   Procedural History

On April 15, 2020, Ms. Gonzalez filed a Complaint against the Defendants. Compl., ECF No. 1 (April 15, 2020).

On June 15, 2020, Ms. Gonzalez filed an Amended Complaint. Am. Compl.

On July 13, 2020, the Clerk of Court entered on the docket a summons returned executed by Ms. Gonzalez, noting that Mr. Aresimowicz had been served on July 9, 2020, at his usual place of abode, and representatives for AFSCME had been served at both their residential and professional addresses. Proof of Serv., ECF No. 14 (July 13, 2020).

On July 24, 2020, Ms. Gonzalez filed another Amended Complaint to correct the cause of action to 42 U.S.C. § 1983.[1] Am. Compl., ECF No. 20 (July 24, 2020).

On July 27, 2020, the Clerk of Court entered on the docket a certificate of service containing certified mail receipts from the Defendants' professional addresses. Cert. of Serv., ECF No. 21 (July 27, 2020).

On July 30, 2020, Mr. Aresimowicz moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim. Def. Aresimowicz's Mot. to Dismiss, ECF No. 23 (July 30, 2020) ("Aresimowicz Mot. to Dismiss"); Def. Aresimowicz's Mem. of L. in Support of Mot. to Dismiss, ECF No. 23-1 (July 30, 2020) ("Aresimowicz Mem.").

On the same day, AFSCME moved to dismiss for lack of subject-matter jurisdiction and failure to state a claim. Def. AFSCME's Mot. to Dismiss, ECF No. 25 (July 30, 2020) ("AFSCME Mot. to Dismiss"); Def. AFSCME's Mem. of L. in Support of Mot. to Dismiss, ECF No. 25-1 (July 30, 2020) ("AFSCME Mem.").

On August 3, 2020, Mr. Aresimowicz moved to stay discovery. Mot. to Stay, ECF No. 27 (Aug. 3, 2020). On August 4, 2020, this Court denied the motion. Order, ECF No. 28 (Aug. 4, 2020).

---

[1] Though Ms. Gonzalez called this an "Amended Complaint," it only sought to amend the civil cover sheet of the previously-filed Amended Complaint, ECF No. 13. Accordingly, the Court views ECF No. 13 as the operative Complaint.

On August 20, 2020, Ms. Gonzalez filed an opposition to the motions to dismiss. Opp'n to Def.'s Mot. to Dismiss, ECF No. 29 (Aug. 20, 2020) ("Pl.'s Opp'n").

On the same day, Ms. Gonzalez opposed the motion to stay, although she acknowledged the Court already denied the motion. Pl.'s Opp'n to Def.'s Mot. to Stay Discovery (Although Denied), Request to Disqualify Counsel, Matthew Larock, Declaratory Relief, ECF No. 30 (Aug. 20, 2020) ("Pl.'s Opp'n and Requests for Relief"). The filing also included a request to remove counsel Matthew Larock from the case. *See id.*

On August 31, 2020, Ms. Gonzalez filed a supplemental opposition to the motions to dismiss. Supp. Opp'n to Def.'s Mot. to Dismiss, ECF No. 34 (Aug. 31, 2020) ("Pl.'s Supp. Opp'n").

On September 3, 2020, Mr. Aresimowicz filed an objection to Ms. Gonzalez's request to disqualify counsel and request declaratory relief. Obj. to Request to Disqualify Counsel and Request Declaratory Relief, ECF No. 35 (Sept. 3, 2020).

That same day, Mr. Aresimowicz filed a reply to Ms. Gonzalez's opposition to his motion to dismiss. Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss, ECF No. 36 (Sept. 3, 2020) ("Aresimowicz Reply").

On September 9, 2020, Ms. Gonzalez filed a sur-reply to Mr. Aresimowicz's reply. Reply to Def.'s Response to Pl.'s Opp'n to Def.'s Mot to Dismiss, ECF No. 37 (Sept. 9, 2020) ("Pl.'s Sur-Reply").

That same day, Ms. Gonzalez filed a reply to Mr. Aresimowicz's objection to Ms. Gonzalez's request to disqualify counsel and request declaratory relief. Reply to Obj. to Disqualify Counsel and Request for Declaratory Relief, ECF No. 38 (Sept. 9, 2020) ("Reply to Obj. to Pl.'s Requests for Relief").

On October 8, 2020, the Court held a hearing on both motions to dismiss. Minute Entry, ECF No. 42 (Oct. 8, 2020).

## II.   STANDARD OF REVIEW

### A.   Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). The plaintiff therefore must make a prima facie showing that jurisdiction exists. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

"The prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id.*; *see also Glenwood Sys., LLC v. Med-Pro Ideal Sols., Inc.*, No. 3:09-cv-956 (WWE), 2010 WL 11527383, at *2 (D. Conn. May 4, 2010) ("At this stage of the proceedings, if the court relies upon pleadings and affidavits, the plaintiff must make out only a prima facie showing of personal jurisdiction, and the affidavits and pleadings should be construed most favorably to the plaintiff."), *aff'd*, 438 F. App'x 27 (2d Cir. 2011) (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)). A court considers the facts as they existed when the plaintiff filed the complaint. *See id.* (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991)).

### B.   Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule

12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), a court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. A court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.")). Because this case has been filed *pro se*, any findings must be construed "liberally" and interpreted "to raise the strongest arguments that they suggest." *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (explaining that *pro se* litigants should be afforded "special solicitude" because they are not represented by counsel). Despite this special solicitude, any pleading still must meet the "pleading standards otherwise prescribed by the Federal [R]ules of Civil Procedure"

in order for the case to proceed. *Suares v. Verizon Commc'ns Inc.*, No. 11-civ-5050 (LAP), 2012 WL 4571030, at *3 (S.D.N.Y. Sept. 29, 2012) (internal quotation marks omitted).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III. DISCUSSION

Ms. Gonzalez's Complaint sets forth four counts. *See* Am. Compl. ¶¶ 112-17.

Count One alleges that Mr. Aresimowicz violated Ms. Gonzalez's First Amendment rights "by censoring her [f]ree [s]peech at the Legislative Office Building . . . on April 16, 2018, April 23, 2018, and March 5, 2020." *Id.* ¶ 113. Count Two alleges that Mr. Aresimowicz retaliated against Ms. Gonzalez "by interfering with her employment opportunity on May 15, 2019," and that "AFSCME retaliated by suing [Ms. Gonzalez] for sharing corruption." *Id.* ¶ 114. Count Three alleges intentional infliction of emotional distress ("IIED"). *Id.* ¶ 115. Count Four alleges that the Defendants violated Ms. Gonzalez's Fourteenth Amendment rights by interfering with her job interview on May 15, 2019 and by depriving her of the future pension she could have earned had she been hired for the job. *Id.* ¶ 117.

There are two motions before the Court: (1) a motion to dismiss for lack of subject-matter and personal jurisdiction and failure to state a claim submitted by Mr. Aresimowicz, *see*

Aresimowicz Mot. to Dismiss; Aresimowicz Mem.; and (2) a motion to dismiss for lack of subject-matter and personal jurisdiction and failure to state a claim and, in the alternative, for improper service submitted by AFSCME, *see* AFSCME Mot. to Dismiss; AFSCME Mem. Because AFSCME's motion to dismiss adopts and incorporates substantially all of the arguments set forth in Mr. Aresimowicz's motion to dismiss, the Court will address the motions together and cite throughout to Mr. Aresimowicz's motion and supporting memorandum of law.

Specifically, Defendants argue that Ms. Gonzalez's First Amendment (Count One), Retaliation (Count Two) and Fourteenth Amendment (Count Four) claims should be dismissed for failure to state a claim, as well as under qualified and absolute immunity doctrines. Aresimowicz Mem. at 8-20. Defendants argue that Ms. Gonzalez's IIED (Count Three) allegations should also be dismissed for failure to state a claim, as well as under the statutory immunity doctrine. *Id.* at 20-24.

Defendants further argue that the court lacks personal jurisdiction over Defendants due to improper service, *id.* at 27-28, and that Ms. Gonzalez's claims arising prior to April 15, 2017, are time-barred, *id.* at 29. AFSCME adopts and incorporates by reference each of these arguments. *See* AFSCME Mem.

The Court first considers Defendants' arguments as to jurisdiction, because "[c]ustomarily, a federal court first resolves any doubts about its jurisdiction over the subject matter of a case before reaching the merits or otherwise disposing of the case." *Cantor Fitzgerald, L.P, v. Peaslee,* 88 F.3d 152, 155 (2d Cir. 1996); *see also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d Cir. 1990) ("the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and

objections become moot and do not need to be determined.") (citing 5 Wright & Miller, Fed. Prac. & Proc. § 1350, 548 (1969)).

## A.  Service of Process and Personal Jurisdiction Under Rules 12(b)(2) and (b)(5)

Under Rule 12(b)(5), a party may file a motion to dismiss due to "insufficient service of process." Fed R. Civ. P. 12(b)(5). "A motion to dismiss under Rule 12(b)(5) may be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules, which sets forth the federal requirements for service." *Hubert v. State of Conn. Dep't of Correction*, No. 3:14-cv-476 (VAB), 2016 WL 706166, at *3 (D. Conn. Feb. 22, 2016) (internal quotation marks omitted). On a Rule 12(b)(5) motion to dismiss, "the plaintiff bears the burden" of proving adequate service. *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010); *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005). "When a plaintiff fails to effect proper service upon a defendant and the defendant does not waive service of process pursuant to [Federal] Rule [of Civil Procedure] 4(d), the plaintiff's action may be subject to dismissal pursuant to Rule 12(b)(5)." *Craig v. Conn. Dep't of Mental Health*, No. 3:16-cv-2100 (JCH), 2017 WL 5892193, at *3 (D. Conn. Nov. 28, 2017).

Defendants argue that the Amended Complaint should be dismissed as to Mr. Aresimowicz and AFSCME for insufficient service of process. Aresimowicz Mem. at 27-28; AFSCME Mem. at 3. Defendants argue that Ms. Gonzalez filed her original Complaint with the Court on April 15, 2020, but did not serve Defendants until July 9, 2020, at which time Ms. Gonzalez served a copy not of the Amended Complaint but of the original Complaint. Aresimowicz Mem. at 28. Defendants allege that because the Amended Complaint "superseded the original Complaint," "[s]ervice of the superseded Complaint was not proper service and should be set aside as insufficient." *Id.*

Ms. Gonzalez responds that Defendants were properly served, as service was tendered within the 90-day rule set forth by Rule 4(m). Pl.'s Opp'n at 4. Ms. Gonzalez alleges she served both Complaints. *Id.*

"Jurisdiction attaches upon the service of a summons and a pleading." *TCS Capital Mgmt., LLC v. Apax Partners, L.P.*, No. 06-cv-13447 (CM), 2008 WL 650385, at *10 (S.D.N.Y. Mar. 7, 2008) (citing Fed. R. Civ. P. 4(c)). "It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668-69 (2d Cir. 1977).

A line of cases from other courts in this Circuit supports Defendants' argument that, because Ms. Gonzalez filed the Amended Complaint before serving the Original Complaint, "[s]ervice of the superseded Complaint was not proper." Aresimowicz Mem. at 28. In *Phillips v. Murchison*, 194 F. Supp. 620, 622 (S.D.N.Y. 1961), a *pro se* plaintiff attempted to serve the defendant by serving him a copy of the summons and the original complaint, but had filed an amended complaint before effecting service. *Id.* at 621-22. The court concluded that the amended complaint, which "was complete in and of itself and did not refer to or adopt the counts of the prior complaint, . . . superseded the original complaint," the "effect of [which] was to withdraw the prior complaint, which thereupon became functus officio." *Id.* at 622. Courts in subsequent cases have relied on *Phillips* "to hold that service of the original complaint after an amended complaint has been filed is ineffective."[2] *TCS Capital Mgmt. LLC*, 2008 WL 650385, at *10 (collecting cases).

---

[2] Though the Second Circuit has stated that an original complaint is only superseded when the amended complaint is properly served, not when it is filed, *see Vesco*, 556 F.2d at 669, this Court agrees that, where service of the original complaint was tendered before the amended pleading was filed, it is distinguishable from *Phillips* and its progeny because in those cases, "as in this one[][,] the original complaint was served *after* the amended one was filed." *TCS Capital Mgmt., LLC*, 2008 WL 650385, at *11 (emphasis in original).

Ms. Gonzalez's Amended Complaint seems to be filed as a replacement of, rather than a supplement to, her original Complaint, as it is approximately ten pages longer and encompasses the same four counts. *Compare* Compl. *with* Am. Compl. Ms. Gonzalez has offered proof that service of some kind was tendered upon Defendants. *See* Proof of Serv., Cert. of Serv. Though Ms. Gonzalez alleges that she served "both complaints" upon the Defendants on July 9, 2020, *see* Pl.'s Opp'n at 4, none of the documents pertaining to service on the docket show whether only one of the original or Amended Complaints, or both, were served. *See* Proof of Serv., Cert. of Serv. Ms. Gonzalez's Amended Complaint also was filed without consent of the parties or leave of the court, as required by Federal Rule of Civil Procedure 15(a).[3]

Federal Rule of Civil Procedure 4(m) states, in relevant part:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). To the extent the Amended Complaint was not served on Defendants, as they contend, Ms. Gonzalez has not shown good cause for this failure. A district court, however, may grant an extension in the absence of good cause. *Hubert*, 2016 WL 706166, at *4. "In deciding whether to grant this relief, the Court must consider the following factors:

> (1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision.

---

[3] Under Rule 15(a), "[a] party may amend its pleading once as a matter of course within . . . 21 days after serving it," and "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)-(2).

*Id.* (citing *Britton v. Connecticut*, No. 3:14-cv-00133 (MPS), 2016 WL 308774, at *5 (D. Conn. Jan. 25, 2016). Here, the factors weigh in favor of allowing an extension, particularly as Defendants had actual notice of the claims asserted in the Amended Complaint "because, since [Defendants] filed [their] appearance . . . [Defendants] ha[ve] received electronic notices of filings in this case, in addition to having been served . . . the original complaint." *Id.* Indeed, Defendants' motions to dismiss are responsive to and cite throughout to the Amended Complaint. *See generally* Aresinowicz Mem.; AFSCME Mem.

The Court also recognizes that requesting that Ms. Gonzalez serve Defendants an Amended Complaint that Defendants have already responded to on the merits would result in unnecessary delay to the proceedings and circumvent the Court's goal of the "efficient and expedient resolution of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016).

Accordingly, given Ms. Gonzalez's representations that both Complaints were served, and that the Defendants' motion is responsive to her Amended Complaint, the Court declines to resolve the service of process issue, as each of Ms. Gonzalez's claims may be otherwise dismissed.

## B. Failure to State a Claim Under Rule 12(b)(6)

Defendants also argue that Ms. Gonzalez's claims under Counts One through Four must be dismissed under Rule 12(b)(6) for failure to state a claim and on qualified, absolute and statutory immunity grounds. Aresimowicz Mem.

Specifically, Defendants argue that Ms. Gonzalez has not sufficiently alleged any constitutional violation to support a claim under § 1983 and has failed to state a First Amendment claim under Count One, a retaliation claim under Count Two, a claim for intentional infliction of emotional distress under Count Three, and a Fourteenth Amendment claim under Count Four. Aresimowicz Mem. 8-14, 20-24. Defendants allege further that Mr. Aresimowicz is entitled to

qualified immunity with respect to all counts; absolute immunity as to the claims relating to legislative hearings or in his capacity as Connecticut House Speaker; and statutory immunity with respect to Count Three. *Id.* at 14-20, 24-27.

The Court first will address Ms. Gonzalez's federal claims. If these claims must be dismissed, then the Court will consider whether supplemental jurisdiction should be exercised before addressing any of Ms. Gonzalez's state law claims. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction."); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996) (supplemental jurisdiction is a matter of "discretion, not . . . right").

### 1.   The First Amendment Retaliation Claim

"Section 1983 provides a federal remedy for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws'" by a person acting under the color of state law. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 105 (1989) (quoting 42 U.S.C. § 1983); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (stating that Section 1983 "provides 'a method for vindicating federal rights elsewhere conferred,' including under the Constitution") (quoting *Baker McCollan*, 443 U.S. 137, 144 n.3 (1979)). "Section 1983 does not itself grant substantive rights; rather, it provides 'a method for vindicating federal rights elsewhere conferred." *Williams v. City of New York*, 2006 WL 2668211, at *26 (E.D.N.Y. Sept. 11, 2006) (quoting *Patterson v. City. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004)).

"The first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker*, 443 U.S. at 140 (quoting 42 U.S.C. § 1983)). The second inquiry is whether the plaintiff has shown that "[t]he conduct at issue '[was] committed by a person acting under color of state law.'" *Cornejo*, 592 F.3d at 127 (quoting *Pitchell v. Callan*,

13 F.3d 545, 547 (2d Cir. 1994)). Related to the second inquiry, the Complaint must indicate that the challenged action was "fairly attributable to the State." *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982).

"To plead a First Amendment retaliation claim[,] a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by the plaintiff's exercise of that right; and (3) the defendant's actions caused the plaintiff some injury." *Dorsett v. City. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).

Ms. Gonzalez alleges that Defendants "violated [her] First Amendment [r]ights by censoring her Free Speech at the Legislative Office Building . . . on April 16, 2018, April 23, 2018, and March 5, 2020." Am. Compl. ¶ 113. She alleges that Mr. Aresimowicz "had AFSCME drop the frivolous lawsuit against [her] the same week," and "used his political position . . . to put an end to the written transcription of public testimony at the Legislative office building, coupled with censoring the videos of her testimony," in an "attempt[] to erase all traces of [her] free speech to avoid another corruption investigation against him." *Id.* ¶ 79.

Defendants argue that Ms. Gonzalez's claim fails on numerous grounds, including that Ms. Gonzalez fails to allege "that she had a constitutional right to have her testimony . . . recorded or preserved," "that [Mr.] Aresimowicz was acting under the color of state law," "that [Mr.] Aresimowicz was acting in his official capacity as state employee," and that her "testimony did not in fact disappear and is still present." Aresimowicz Mem. 8-10. Defendants also argue that Ms. Gonzalez fails to state a claim under the First Amendment because she "has not plausibly alleged that she has a right protected by the First Amendment or that she has suffered any injury." *Id.* at 10-11.

The Court agrees.

Ms. Gonzalez does not allege that Mr. Aresimowicz or Defendants interfered in her testimony or prevented her from testifying at any of the hearings cited in her Amended Complaint. Rather, she claims that the First Amendment violation arises because Mr. Aresimowicz allegedly "disposed of all of the plaintiff's public testimony, abusing his power, protecting AFSCME," Am. Compl. ¶ 8, and that "AFSCME affiliates . . . wanted to shield AFSCME from public scrutiny, so they censored [Ms. Gonzalez's speech] at the Legislative office building abusing their power," *id.* ¶ 11. Ms. Gonzalez's claim fails on several grounds.

First, she has failed to allege that she has a First Amendment or other constitutional right to have her testimony preserved or recorded. Though the Second Circuit has held that there is "a qualified right of access" to criminal and civil trials "and to their related proceedings and records," *N.Y. Civ. Libs. Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012), as well as "a limited First Amendment right of access to certain aspects of the executive and legislative branches," *id.* at 299-300 (quoting *Detroit Free Press v. Ashcroft*, 303 F.3d 681, 695 (6th Cir. 2002)), and "a presumptive right of access to [some] administrative for[a]," *id.* at 300-01, Ms. Gonzalez has not asserted that any right exists with respect to access to recorded testimony of any of the relevant proceedings, either for Ms. Gonzalez herself or for the general public.

Ms. Gonzalez also fails to allege that she has suffered any plausible injury. Though she alleges that the transcript and video recordings from the April 16, 2018, April 23, 2018, and March 5, 2020, hearings were removed from the public record by Mr. Aresimowicz and AFSCME, *see* Am. Compl. ¶¶ 79, 113, Pl.'s Sur-Reply ¶ 107, public video records of the April 2018 proceedings and a transcript of the March 2020 proceeding are available, including Ms. Gonzalez's testimony.[4]

---

[4] The Court may take judicial notice of documents expressly incorporated into the complaint by reference or, for a document not expressly incorporated by reference, where "the complaint relies heavily upon its terms and effect." *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)). "In most instances where this exception is recognized, the incorporated material . . . containing

*See Joint Comm. on Legis. Mgmt. Sexual Harassment Policy Informational Hearing*, 2018 Reg. Sess. (Conn. 2018), *available at* https://ct-n.com/ctnplayer.asp?odID=15202 (2:38:00 – 2:45:08); *Judiciary Comm. Public Hearing on Judicial Nominations Followed by Comm. Mtg.* 2018 Reg. Sess. (Conn. 2018), *available at* https://ct-n.com/ctnplayer.asp?odID=15225 (12:15:00 – 12:21:00); *Labor and Pub. Empls. Comm. Public Hearing Tr.* 2020 Reg. Sess. (Conn. 2020), ECF No. 23-4, Ex. C.[5] Even if she had proven that these records had been expunged,[6] which she has not, she has not alleged how any such destruction of these records constitutes a cognizable "injury" under the law.

Moreover, even if Ms. Gonzalez could demonstrate an injury, she also has failed to allege that Mr. Aresimowicz and AFSCME affiliates took any actions that were motivated or substantially caused by Ms. Gonzalez's testimony. Her allegations that Mr. Aresimowicz "made a capricious, arbitrary decision" to expunge public records, without more, amounts to precisely the "conclusory statements" insufficient under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. at 678.

---

obligations upon which the plaintiff's complaint stands or falls, but which for some reason – usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim – was not attached to the complaint." *Id.* (quoting *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006)). Moreover, these documents are a matter of the public record, and the Court, finding "no serious questions as to [their] authenticity," "may take judicial notice . . . of the content of the record." *James v. Bradley*, 808 F. App'x 1, 3 (2d Cir. 2020) (citations omitted). The Court does not rely on the document for "the truth of the matters asserted therein," *id.*, but rather only for the fact that they are available in the public record.

[5] While Defendants in their briefing included links to the April 16, 2018 and April 23, 2018 testimony, *see* Aresimowicz Mem. at 3-4, and attached a copy of the transcript from the March 5, 2020, hearing, *see id.*, Ex. C, the Court also has verified that these are publicly accessible online.

[6] To the extent Ms. Gonzalez alleges in response to Defendants' motions to dismiss that these publicly available videos or transcripts have been "edited," *see* Pl.'s Opp'n at 16, she provides nothing more than conclusory allegations, nor asserts how any such alteration would amount to a § 1983 violation.

18

Accordingly, the Court need not, and does not, address whether Mr. Aresimowicz is entitled to absolute or qualified immunity as to Count One, and Ms. Gonzalez's First Amendment claims under Count One will be dismissed.[7]

### 2. The Second Retaliation Claim

Ms. Gonzalez also alleges that Defendants "retaliated [against her] by interfering with her employment opportunity on May 15, 2019." Am. Compl. ¶ 114. She alleges that Mr. Aresimowicz "retaliated by lying to the plaintiff, [as] he had absolutely no intention[] in calling Commissioner Rollin Rock to get her back to work," and "admitted he had no intention of helping [her] get her job back." *Id.* 114. She alleges that "AFSCME retaliated by suing [her] for sharing corruption by . . . AFSCME and her sexual assault . . . , then AFSCME retracted the[ir] lawsuit" after Ms. Gonzalez testified in April 2018.

Defendants argue that Ms. Gonzalez's retaliation claim fails on several grounds, including that Ms. Gonzalez has not alleged (1) "any violation of [a] constitutional right or that [Mr.] Aresimowicz was acting under the color of state law when he allegedly failed to call the Department of Correction[] in 2019 to help her get a job," Aresimowicz Mem. at 12; (2) that Mr. Aresimowicz was "personally involved in the [DOC]'s decision not to hire her," *id.*; and (3) "any connection" between her various hearing testimony and the DOC's decision not to hire her, *id.* at 13. AFSCME also argues that Ms. Gonzalez's claim with respect to AFSCME is time-barred by

---

[7] In any event, Ms. Gonzalez has not identified any clearly established law allowing for her novel First Amendment retaliation claim. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009) ("[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.") (internal citations omitted); *Bacon v. Phelps*, 961 F.3d 533, 545 (2d Cir. 2020) (finding that because no Second Circuit or Supreme Court precedent had put defendants on notice that their conduct was unlawful, defendants were entitled to qualified immunity).

the three-year statute of limitations and that Ms. Gonzalez fails to allege any adverse action resulting from the lawsuit or its conclusion. AFSCME Mem. at 3.

The Court agrees.

"A finding of 'personal involvement of [the individual] defendants' in an alleged constitutional deprivation is a prerequisite to an award of damages under Section 1983." *Feingold v. N.Y.*, 366 F.3d 138, 159 (2d Cir. 2004) (quoting *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001)). Ms. Gonzalez alleges only that Mr. Aresimowicz failed to fulfill his alleged promise to call the DOC, not that he affirmatively took part in or played any role in the DOC's decision not to hire her. Am. Compl. ¶¶ 81-84, 114. Rather, Ms. Gonzalez admits that it was "[t]he instructors [who] failed Ms. Gonzalez," allegedly "because they decided she was too old for the job." [8] Pl.'s Opp'n ¶ 91.

Even if true, Ms. Gonzalez's assertion that "[Mr.] Aresimowicz knew [she] was taking the [physical] test," but failed to inform her or otherwise act in accordance with that knowledge, *id.*, does not give rise to liability under a theory of retaliation for Mr. Aresimowicz where he was not personally involved. *See Feingold*, 366 F.3d at 159; *Craig v. Baker*, No. 3:16-cv-2100 (JCH), 2018 WL 705001, at *6 (D. Conn. Feb. 2, 2018) (dismissing case where the plaintiff had not "plausibly alleged that [the defendant] was personally involved in any action taken against her"). A plaintiff pleading personal involvement must allege at least one of the following five courses of conduct:

> (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation . . . failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the

---

[8] To the extent that Ms. Gonzalez alleges that she was denied employment at the Department of Correction because of her gender or age, these issues should be raised in the context of Ms. Gonzalez's companion lawsuit against the Department of Correction pending before the Court. *See* Compl., *Gonzalez v. Conn. Dep't of Correction, et al.*, No. 3:20-cv-736 (VAB) (D. Conn. Sept. 11, 2020), ECF No. 1.

> wrongful acts; or (5) the defendant exhibited deliberate indifference
> . . . by failing to act on information indicating that unconstitutional
> acts were occurring.

*Kregler v. City of N.Y.*, 770 F. Supp 2d 602, 606-07 (S.D.N.Y. 2011) (alterations in original) (citing

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). Beyond the fact that Ms. Gonzalez has set

forth no facts showing that Mr. Aresimowicz or AFSCME had any contact with the Department

of Correction regarding the outcome of the May 15, 2019, job interview, or that either Defendant

could have played or did play any role in Ms. Gonzalez's hiring decision, Ms. Gonzalez does not

allege facts showing that either Mr. Aresimowicz or AFSCME participated directly in the DOC's

decision not to hire her; was aware that she was not being hired and were in a position to remedy

the wrong; created any policy or allowed any potentially unconstitutional policy to continue; or

was grossly negligent in or indeed supervised any DOC employees deciding not to hire Ms.

Gonzalez. *See id.*

Even if Mr. Aresimowicz or AFSCME had been personally involved in the failure to hire

Ms. Gonzalez, which she has not sufficiently alleged, Ms. Gonzalez's claim also fails because, to

the extent her failure-to-hire claim has any viability, she does not allege that Mr. Aresimowicz or

AFSCME were the parties who took any adverse employment action against the plaintiff. *See*

*Colon v. Mark-Viverito*, No. 16-cv-4540 (VSB), 2018 WL 1565635, at *7 (S.D.N.Y. Mar. 26,

2018) (dismissing case where the plaintiff could not establish any adverse action taken by a

legislator who was not her employer). Ms. Gonzalez therefore has not alleged that Mr.

Aresimowicz or AFSCME are "responsible persons acting under color of state law," *Vega v.*

*Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015), such that any failure to hire

may be attributed to them.

As to Ms. Gonzalez's retaliation claims against AFSCME, the Court finds that these are time-barred. Ms. Gonzalez alleges that AFSCME "in retaliation for [her] public testimony responded with a civil lawsuit" on August 28, 2015 in state court.[9] Am. Compl. ¶ 105. "Section 1983 actions arising in Connecticut, like this one, are governed by the three-year limitations period set forth in Conn. Gen. Stat. § 52-577.[10]" *Harnage v. Torres*, 665 F. App'x 82, 83 (2d Cir. 2016) (citing *Lounsbury v. Jeffries*, 25 F.3d 131, 132-34 (2d Cir. 1994)). And though "[a] statute of limitations defense is most often pleaded as an affirmative defense and requires a factual inquiry beyond the face of the complaint," *Johnson v. Conn.*, No. 3:19-cv-01054 (SRU), 2020 WL 5594120, at *2 (D. Conn. Sept. 18, 2020) (quoting *OBG Tech. Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 503 (D. Conn. 2007)), "[a] defendant may, however, raise the statute of limitations in a Rule 12(b)(6) motion [w]here the dates in a complaint show that an action is barred by a statute of limitations," *id.* (quoting *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989)) (internal quotation marks omitted) (second alteration in original).

To the extent Ms. Gonzalez alleges that any lawsuit AFSCME brought against her in 2015 was done so in retaliation for any actions attributable to Ms. Gonzalez, *see* Am. Compl. ¶¶ 76,

---

[9] Ms. Gonzalez alleges that the relevant docket number is HHD-cv-15-6062029-S, and that the case was filed on August 28, 2015, Am. Compl. ¶¶ 76, 105, 114, but does not attach a copy of any such suit to the Amended Complaint. While the Court may take judicial notice of state court proceedings, *see, e.g., Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) (courts "may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings"), a search of the Hartford Judicial Court database identifies no such docket entry, *see* State of Conn. Judicial Branch, *Case Look-Up*, https://jud.ct.gov/jud2.htm (last accessed October 21, 2020). A party search for Ms. Gonzalez reveals only two proceedings, both seemingly unrelated to the present litigation. *See id.* However, AFSCME does not dispute the fact that a lawsuit against Ms. Gonzalez was filed; rather, it argues only that claims arising out of any such suit would be time-barred. AFSCME Mem. at 3. Accordingly, the Court construes the facts in the light most favorable to Ms. Gonzalez and presumes for sake of resolving the pending motions to dismiss that such a lawsuit was filed.

[10] The statute provides, in relevant part, that "[n]o action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Conn. Gen. Stat. § 52-577.

105, 114, she may not rely upon that suit as a basis for relief under § 1983, as more than three years have passed since the lawsuit was allegedly filed. *See Harnage v. Torres*, 665 F. App'x 82, 84 (2d Cir. 2016) ("Because [the plaintiff] did not file his complaint until . . . more than three years after the statute of limitations had run, his claims are time-barred.")

Accordingly, the Court need not, and does not, address whether Mr. Aresimowicz is entitled to absolute or qualified immunity as to Count Two, and Ms. Gonzalez's retaliation claims under Count Two will be dismissed.[11]

### 3.   The Fourteenth Amendment Due Process Claim

The Due Process Clause of the Fourteenth Amendment provides: "[N]or shall any state deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the . . . Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "To award damages under 42 U.S.C. § 1983 for an alleged violation of procedural due process, a court must find that, as a result of conduct performed under color of state law, the plaintiff was deprived of life, liberty or property without due process of law." *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996).

To determine whether a procedural due process violation has occurred, courts first "ask whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Victory v. Pataki*, 814 F.3d 47, 67 (2d Cir. 2016). "The threshold issue is always whether the plaintiff has property or liberty interest protected by the Constitution." *Michaelidis v. Berry*, 502 F. App'x 94, 97 (2d Cir. 2012) (quoting *Narumanchi v. Bd. of Trs.*, 850 F.2d 70, 72 (2d Cir. 1988)).

---

[11] Again, as with her other retaliation claim, Ms. Gonzalez has not provided – nor has the Court identified – any clearly established law saving this claim from the application of qualified immunity.

Ms. Gonzalez in Count Four alleges that the Defendants violated her Fourteenth Amendment rights "by violating procedural law at [the Connecticut Commission on Human Rights and Opportunities ("CHRO")]," "depriv[ing] [her] of her life, liberty, specifically [the] pension" she could have earned from the employment position she sought, and "interfering" with her May 15, 2019 job application "in retaliation for exposing their corruption." Am. Compl. ¶ 117.

Defendants argue that the claim regarding the CHRO "fails to allege any violation of federal law or constitutional rights," Aresimowicz Mem. at 14 n.3, and that Ms. Gonzalez fails to plausibly allege a constitutionally protected property or liberty interest in the prospective job with the Department of Correction, *id.* at 14-15.

The Court agrees.

To the extent that Ms. Gonzalez's Fourteenth Amendment argument may be construed as a violation of due process claim, she has not alleged that she was deprived of a liberty or property interest within the meaning of the Due Process Clause.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). A plaintiff "must, instead, have a legitimate claim of entitlement to it." *Finley v. Giaccobe*, 79 F.3d 1285, 1296 (2d Cir. 1996). And "[a]s a general rule, 'there is no constitutionally protected property interest in prospective government employment.'" *Leon v. Rockland Psychiatric Ctr.*, 232 F. Supp. 3d 420, 434 (S.D.N.Y. 2017) (quoting *Abramson v. Pataki*, 278 F.3d 93, 100 (2d Cir. 2002)); *see also Coogan v. Smyers*, 134 F.3d 479, 487 (2d Cir. 1998) (prospective employee "had no property right or entitlement to the position" he sought); *Almontaser v. N.Y.C. Dep't of Educ.*, No. 07-cv-10444 (SHS), 2009 WL 2762699, at *4 (S.D.N.Y. Sept. 1, 2009) (finding that "a job applicant . . . has no property interest in the position for which

24

she applies"). As courts in this District have held, "before one can develop a property right in employment, one must—at a minimum—be employed." *Crenshaw v. City of New Haven*, No. 3:14-cv-01249 (VLB), 2015 WL 5797018, at *3 (D. Conn. Sept. 30, 2015), *aff'd*, 652 F. App'x 58 (2d Cir. 2016) (quoting *Kosinski v. Conn. State Dep't of Educ.*, No. 3:10-cv-0805 (CSH), 2011 WL 1134236, at *5 (D. Conn. Mar. 24, 2011)).

The Due Process Clause also does not "grant a liberty interest in any particular employment position." *Kosinski*, 2011 WL 1134236, at *5. Instead, "[a] decision not to hire does not implicate [a] [p]laintiff's liberty interest unless that decision 'effectively prohibits [him] from engaging in a profession, or pursuing any job in a given field.'" *Id.* (quoting *Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 169 (E.D.N.Y. 2009)). "It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another.'" *Roth*, 408 U.S. at 575; *see also Jones v. City Sch. Dist. of New Rochelle*, 695 F. Supp. 2d 136, 146 (S.D.N.Y. 2010) ("Prospective employment does not confer a liberty interest because [the plaintiff] is not entitled to . . . employment with the [defendant]; indeed, [the plaintiff] is not entitled to employment with any particular employer."); *Shkilnyj v. Erie Cmty. Coll.*, No. 15-cv-905-FPG, 2018 WL 1471403, at *4 (W.D.N.Y. Mar. 26, 2018) (finding prospective employee "failed to plausibly allege a constitutionally protected liberty interest in the position").

Accordingly, even assuming that Ms. Gonzalez has demonstrated, or could plausibly demonstrate, that Mr. Aresimowicz or AFSCME were responsible for her failure to gain employment after her May 15, 2019, interview with the Department of Correction, this prospective employment is not a protected property or liberty interest sufficient to give rise to a due process claim.[12] The Court therefore need not, and does not, address whether Mr. Aresimowicz is entitled

---

[12] With respect to Ms. Gonzalez's statement regarding certain CHRO proceedings, the Court agrees with Defendants that, to the extent Ms. Gonzalez attempts to raise a CHRO-related claim, any such claim fails because "no ongoing

to absolute or qualified immunity as to Count Four, and Ms. Gonzalez's Fourteenth Amendment claims under Count Four will be dismissed.[13]

### 4. Supplemental Jurisdiction

Having determined that Ms. Gonzalez's federal claims should be dismissed, the Court must then determine whether it should exercise supplemental jurisdiction over her remaining state law claims.

Under 28 U.S.C. § 1367(a),

> In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

"[D]istrict courts may decline to exercise supplemental jurisdiction over a claim," however, if "the district court has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).

Supplemental or pendent jurisdiction is a matter of discretion, not of right. *See Gibbs*, 383 U.S. at 726. Where all federal claims have been dismissed before a trial, state claims generally should be dismissed without prejudice and left for resolution by the state courts. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual

---

violation of federal law is plausibly alleged." *City of Shelton v. Collins*, No. 3:12-cv-1176 (JBA), 2014 WL 1032765, at *5 (D. Conn. Mar. 14, 2014), *aff'd sub nom.*, *City of Shelton v. Hughes*, 578 F. App'x 53 (2d Cir. 2014).

[13] Once again, neither Ms. Gonzalez nor the Court has identified any clearly established law saving this claim from the application of qualified immunity.

case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise supplemental jurisdiction over the remaining state-law claims.").

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity." *Kolari*, 455 F.3d at 122; *see also Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018) ("If one of the § 1367(c) categories applies, the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction . . . . '[A] district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*: economy, convenience, fairness, and comity.'" (quoting *Jones v. Ford Motor Credit Co.*, 385 F.3d 205, 214 (2d Cir. 2004)).

"In weighing these factors, the district court is aided by the Supreme Court's additional guidance in *Cohill* that 'in the usual case in which all federal claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Kolari*, 455 F.3d at 122 (quoting *Cohill*, 484 U.S. at 350); *see also Catzin*, 899 F.3d at 83 ("Under this prong, in a great many cases, the evaluation will usually result in the dismissal of the state-law claims.")

But as the Second Circuit recently emphasized, "[t]he principle that the elimination of federal-law claims prior to trial generally points to declining to exercise supplemental jurisdiction 'in the usual case' clearly does not mean that the balance of factors always points that way." *Catzin*, 899 F.3d at 86. Thus, "[w]hen §1367(c)(3) applies, the district court must still meaningfully balance the supplemental jurisdiction factors" of judicial economy, convenience, fairness, and comity before declining to exercise supplemental jurisdiction. *Id.*

The balance of factors here weighs in favor of declining to exercise supplemental jurisdiction. The Court finds that principles of comity suggest that Connecticut courts are more suited to determine the viability of Ms. Gonzalez's intentional infliction of emotional distress claim, which involves Connecticut law. Her "claims may be vindicated, if at all, in state court under traditional state law principles." *Giammatteo v. Newton*, 452 F. App'x 24, 30 (2d Cir. 2011) (citing *Baker v. McCollan*, 443 U.S. 137, 146 (1979)).

Accordingly, the Court declines to exercise supplemental jurisdiction and will dismiss Ms. Gonzalez's intentional infliction of emotional distress claim without prejudice as a result.

### C.  Leave to Amend

While Ms. Gonzalez has not moved for leave to amend the Complaint, for the reasons discussed below, granting such leave to amend would be futile.

"[I]t is often appropriate for a district court, when granting a motion to dismiss for failure to state a claim, to give the plaintiff leave to file an amended complaint." *Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 91 (2d Cir. 2003) (referencing *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)). "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life. Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Court acknowledges that Ms. Gonzalez is currently proceeding *pro se* and notes that as a general matter, the Second Circuit has recognized that the solicitude afforded to *pro se* litigants includes a "relaxation of the limitations on the amendment of pleadings[.]" *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (citing *Holmes v. Goldin*, 615 F.2d 83, 85 (2d Cir. 1980)); *see also Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) ("A *pro se* complaint should

not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim may be stated.") (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)) (internal quotation marks and alterations omitted).

But where there is no indication that pleading additional facts would resuscitate a claim that has been dismissed, the Court need not grant leave to amend. *See Grullon*, 720 F.3d at 140 ("Leave to amend may properly be denied if the amendment would be 'futil[e].'" (quoting *Foman*, 371 U.S. at 182)); *Ruffalo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend."); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (denying leave to replead where the court "d[id] not find that the complaint 'liberally read' suggest[ed] that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe," and concluding that "the problem with [the *pro se* plaintiff's] causes of action is substantive; better pleading will not cure it.") (citations, internal quotation marks, and alterations omitted).

Leave to amend here would be futile because, for the reasons outlined above, the legal theories behind Ms. Gonzalez's claims are fundamentally flawed, and an opportunity to amend will not cure them. Accordingly, the Court declines to provide leave to amend the Complaint. *See Wright v. Albany City Police Ct.*, 1:18-CV-649 (GTS/DJS), 2018 WL 4347793, at *3 (N.D.N.Y. Sept. 12, 2018) (finding that "granting Plaintiff leave to amend would be, to say the least, unlikely to be productive and indeed would be futile"); *Brownville v. Indian Mtn. Sch.*, No. 3:14-cv-1472 (JBA), 2017 WL 3726467, at *8 (D. Conn. Aug. 29, 2017) (denying plaintiff's motion to amend the complaint because "[n]othing in [his] documents . . . support[ed]" his central claim, meaning that "any amendment to the Complaint would be futile"). Leave would be particularly futile as Ms.

Gonzalez has already amended her Complaint. *See Galloway v. Caputo*, No. 3:17-cv-2156 (JCH), 2018 WL 5044244, at *2 (D. Conn. Feb. 9, 2018) ("Leave to amend need not be granted, particularly where a plaintiff has already had an opportunity to amend the complaint, when amendment would be futile.").

## IV.    CONCLUSION

For the foregoing reasons, Mr. Aresimowicz's and AFSCME's motions to dismiss are **GRANTED**.

Because the Court also finds that leave to amend the Complaint would be futile, this case is **DISMISSED** with prejudice, with the exception of Ms. Gonzalez's intentional infliction of emotional distress claim, which is **DISMISSED** for lack of jurisdiction without prejudice.

The Clerk of Court is respectfully directed to enter judgment in favor of Defendants and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 23rd day of October, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE